# U.S. Department of Justice
## United States Marshals Service

# PROCESS RECEIPT AND RETURN
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Federal Trade Commission | 08C1185 |
| DEFENDANT | TYPE OF PROCESS |
| Safe Harbour Foundation of Florida, Inc., et al. | S/C |

**SERVE** → NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

Safe Harbour Foundation of Florida, Inc. C/O Peter J. Porcelli, II

**AT** ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)

Fort Dix Federal Correction Institute 5756 Hartford & Pointville Road Fort Dix, NJ

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

David A. O'Toole
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603

| | |
|---|---|
| Number of process to be served with this Form - 285 | 1 |
| Number of parties to be served in this case | 2 |
| Check for service on U.S.A. | X |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Zip code: 08640

FILED
APR 0 8 2008
4-8-08 ← PA
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Signature of Attorney or other Originator requesting service on behalf of:  ☒ PLAINTIFF  ☐ DEFENDANT

TELEPHONE NUMBER | DATE: 03-03-08

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin | District to Serve | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | 1 of 2 | No. 24 | No. B50 | Td | 03-03-08 |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☒ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

Name and title of individual served (if not shown above)

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Address (complete only if different than shown above)

FDC Philadelphia 700 Arch St
Philadelphia, PA 19106

Date of Service: 3/20/08  Time: 1301 pm

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or Amount of Refund |
|---|---|---|---|---|---|
| 90.00 | 31.00 | | 121.00 | | |

REMARKS: 1st Endvn 3/20/08 I/m was located at above address but was transferred to Chicago on 3/14/08

PRIOR EDITIONS MAY BE USED — **1. CLERK OF THE COURT** — FORM USM-285 (Rev. 12/15/80)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Federal Trade Commission
v.
Safe Harbour Foundation of Florida, Inc.,
Silverstone Lending LLC, Silverstone
Financial, LLC, Keystone Financial, LLC,
Southeast Advertising, Inc., MT 25 LLC,
Peter J. Porcelli, II, Bonnie Harris, and
Christopher Tomasulo

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: 08-cv-1185

ASSIGNED JUDGE: J. GUZMAN

DESIGNATED
MAGISTRATE JUDGE: M.J. VALDEZ

TO: (Name and address of Defendant)

Safe Harbour Foundation of Florida, Inc.
c/o Peter J. Porcelli, II
Fort Dix Federal Correction Institute
5756 Hartford & Pointville Road
Fort Dix, NJ 08640

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

David A. O'Toole
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603

an answer to the complaint which is herewith served upon you, within ___20___ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

(By) DEPUTY CLERK

FEB 28 2008

DATE

FILED
FEBRUARY 27, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 1185

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE GUZMAN
MAGISTRATE JUDGE VALDEZ

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) Civ. No. |
| v. | )<br>) |
| SAFE HARBOUR FOUNDATION OF<br>    FLORIDA, INC., a Florida corporation, | ) COMPLAINT FOR INJUNCTIVE<br>) AND OTHER EQUITABLE<br>) RELIEF J. N. |
| SILVERSTONE LENDING, LLC, a Florida<br>    limited liability company, | )<br>) |
| SILVERSTONE FINANCIAL LLC, a Florida<br>    limited liability company, | )<br>) |
| KEYSTONE FINANCIAL, LLC, a Nevada<br>    limited liability company, | )<br>) |
| SOUTHEAST ADVERTISING, INC., a Florida<br>    corporation, | )<br>) |
| MT25 LLC, a Nevada limited liability company, | ) |
| PETER J. PORCELLI, II,<br>    individually and as officer, partner, or<br>    member of Silverstone Lending, LLC,<br>    Silverstone Financial LLC, and Safe<br>    Harbour Foundation of Florida, Inc. | )<br>)<br>)<br>)<br>) |
| BONNIE A. HARRIS,<br>    individually, and as a manager of Safe<br>    Harbour Foundation of Florida, Inc. | )<br>)<br>) |
| CHRISTOPHER TOMASULO,<br>    individually and as a manager of Safe<br>    Harbour Foundation of Florida, Inc., | )<br>)<br>) |
| Defendants. | ) |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint, alleges as follows:

1. This is an action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), and Section 108(c) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1607(c), to obtain preliminary and permanent injunctive relief, rescission, restitution, reformation, disgorgement, and other equitable relief against defendants for engaging in acts or practices in violation of TILA, 15 U.S.C. §§ 1601-1666j, as amended, including, but not limited to, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), as amended, and TILA's implementing Regulation Z, 12 C.F.R. Part 226, as amended, and for unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as amended.

2. This Court has subject matter jurisdiction over this matter and personal jurisdiction over the defendants pursuant to 15 U.S.C. §§ 45(a), 53(b), and 1607(c), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue in the United States District Court for the Northern District of Illinois is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

## Parties

4. Plaintiff, the Commission, is an independent agency of the United States Government created and given statutory authority and responsibility by the FTC Act, as amended, 15 U.S.C. §§ 41-58. The Commission is charged, inter alia, with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or

2

practices in or affecting commerce, and TILA, which grants to consumers certain substantive rights in consumer credit transactions. The Commission is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 108(c) of TILA, 15 U.S.C. § 1607(c), to initiate federal district court proceedings to enjoin violations of the FTC Act, TILA, HOEPA, and Regulation Z and to secure such equitable relief as may be appropriate in each case including, but not limited to, restitution and disgorgement.

## Defendants

5. Defendant Safe Harbour Foundation of Florida, Inc. ("Safe Harbour") is a corporation organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

6. Defendant Silverstone Lending, LLC ("Silverstone Lending"), is a limited liability company organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

7. Defendant Silverstone Financial LLC ("Silverstone Financial") is a limited liability company organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

8. Defendant Keystone Financial, LLC, is a limited liability company organized, existing, and doing business under the laws of the State of Nevada. Rachael Cook is its

registered agent and the only manager identified with the Nevada Secretary of State. Its principal place of business is in Las Vegas, Nevada.

9. At all times material herein, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial have been "creditors," as that term is defined in Section 103(f) of TILA, 15 U.S.C. § 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. § 226.2(a)(17), and therefore are required to comply with applicable provisions of TILA, HOEPA, and Regulation Z.

10. Defendant Southeast Advertising, Inc., is a corporation organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Suite A, Clearwater, Florida 33762.

11. Defendant MT25 LLC, is a limited liability company organized, existing, and doing business under the laws of the State of Nevada. Ival Sub Consulting is its registered agent and the only manager identified with the Nevada Secretary of State. Ivelina Stameva is the President, Secretary, Treasurer and Director of Ival Sub Consulting. MT25 LLC's principal place of business is in Henderson, Nevada. Ival Sub Consulting's principal place of business is in Las Vegas, Nevada.

12. At all times material herein, Defendants Southeast Advertising and MT25 LLC have purchased or were assigned mortgage loans from Silverstone Lending, Silverstone Financial, and Keystone Financial and were "assignees" of such mortgage loans for purposes of Section 131 of TILA, 15 U.S.C. § 1641.

13. Defendant Peter J. Porcelli, II, is a member, partner, and/or owner of Silverstone Lending and Silverstone Financial, and manages Safe Harbour. Individually or in concert with others, at all times material to this action, he has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

14. Defendant Bonnie Harris is a manager of Silverstone Lending, Silverstone Financial, and Safe Harbour. Individually or in concert with others, at all times material to this action, she has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

15. Defendant Christopher Tomasulo is a manager of Silverstone Lending, Silverstone Financial, and Safe Harbour. Individually or in concert with others, at all times material to this action, he has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

16. Defendants Silverstone Lending, Silverstone Financial and Safe Harbour have operated as a common business enterprise while engaging in the acts and alleged practices.

## DEFENDANTS' BUSINESS PRACTICES

17. On August 14, 2002, the FTC filed a complaint against Peter J. Porcelli, II, Bonnie Harris, Christopher Tomasulo and various corporate entities they controlled, in the

5

United States District Court for the Northern District of Illinois. On a motion by the FTC, Judge Darrah entered a temporary restraining order with asset freeze and appointed a receiver over the corporate entities on August 15, 2002. *FTC v. Bay Area Business Council, Inc., et al.*, No. 02-C-5762 (N.D. Ill.).

18. On April 14, 2004, the Court in *FTC v. Bay Area Business Council, Inc., et al.*, entered an order for permanent injunction and monetary relief against, *inter alia*, defendants Porcelli and Harris, which ordered them to pay more than $12.5 million in consumer redress to the FTC. Section two of the Order (at 6) also provides:

> Defendants are hereby permanently restrained and enjoined from promoting, offering for sale, or selling, directly or indirectly, Credit-Related Products to any consumer.

"Credit-Related Product" is defined by the Order (at 6) as:

> any product, program, or service which is advertised, offered for sale, or sold as a method by which persons may establish or obtain any extension of credit or credit device, including, but not limited to credit cards, loans, or financing, or as a method to consolidate or liquidate debts.

19. On February 2, 2005, the Court in *FTC v. Bay Area Business Council, Inc., et al.*, entered a stipulated final judgment and order for permanent injunction as to Christopher Tomasulo. Section one of that Order (at 5) provides:

> Defendant Christopher Tomasulo is hereby permanently restrained and enjoined from engaging in, participating in, or assisting in the Telemarketing,

advertising, promotion, offering for sale, or sale of Credit-Related Products to any consumer.

"Credit-Related Product" is defined by the Order (at 4) as:

any product, program, or service which is advertised, offered for sale, or sold as a method by which persons may establish or obtain any extension of credit or credit device, including, but not limited to credit cards, loans, or financing, or as a method to consolidate or liquidate debts.

20. Since at least 2004, Defendants have maintained a substantial course of trade in offering and extending credit to consumers and others.

21. Defendant Safe Harbour's articles of incorporation claim that it is designed to "help save homeowners from foreclosure by introducing them to lenders."

22. Safe Harbour contacts homeowners facing foreclosure, typically by sending them a flyer in the mail. The flyer, under the heading "SAFE HARBOUR FOUNDATION, A NON PROFIT CORPORATION, FORECLOSURE RELIEF" states:

We have all the funds available to pay your bills
and save your home from foreclosure. GUARANTEED!

• Don't lose your home.

• Guaranteed solution to stay in your home.

• Immediate relief from financial pressures.

• Stop the harassment.

• Save your credit

7

23. The Safe Harbour flyer goes on to describe Safe Harbour as "having been established to give people a second chance when no one else will." It warns consumers to "[b]e careful of other companies who look to profit from your misfortune."

24. Safe Harbour does not itself provide the loans to homeowners; it arranges such loans with related for-profit lenders. In many instances, Safe Harbour arranges for consumers to obtain mortgage loans that are secured by the consumers' principal dwelling.

25. All or nearly all of the loans secured by Safe Harbour for its clients are through Silverstone Financial, or Silverstone Lending, two companies also owned and operated by defendant Porcelli, or Keystone Financial, LLC.

26. In many instances, the Silverstone lending entities assign the mortgages or deeds to each other, to Southeast Advertising, or to MT25 LLC.

27. Many of the loans originated by Silverstone Lending, Silverstone Financial, and Keystone Financial are high-rate or high-fee loans covered by the Home Ownership and Equity Protection Act ("HOEPA"). The HOEPA applies to high-cost refinancing and home equity loans that are secured by the borrower's principal dwelling, including loans where (1) the annual percentage rate at consummation of the transaction will exceed (a) by more than 8 percentage points for first-lien loans, or (b) by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (2) the total points and fees payable by the borrower will exceed the greater of $561 or 8% of the

8

total loan amount. If a loan qualifies as a high-cost loan under HOEPA, the lender is required to provide the consumer with specific disclosures at least three days before the loan is consummated; certain loan terms are prohibited; and specified practices are barred.

28. In the course of offering and extending HOEPA loans to borrowers, Silverstone Lending, Silverstone Financial, and Keystone Financial have extended credit to a borrower based on the borrower's collateral without regard to the borrower's ability to pay. For example, Silverstone Lending, Silverstone Financial, and Keystone Financial often make loans to borrowers who are in default of their existing mortgages and face foreclosure. In many instances, Silverstone Lending, Silverstone Financial, and Keystone Financial make loans to these borrowers based on the equity in their homes without considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower is able to make the scheduled payments to repay the obligation.

29. Many of Silverstone Lending's, Silverstone Financial's, and Keystone Financial's HOEPA loans are six-month loans requiring a large lump-sum "balloon" payment at the end of five regularly scheduled monthly payments ("six-month balloon loans"). The six-month balloon loans are typically "negative amortization" loans with a note interest rate of 18% with monthly "interest only" payments that are computed at a rate of 12%. All accrued and unpaid interest that is not included in the regular monthly payment is added to the principal balance of the loan that must be paid in one lump-sum balloon

9

payment at the end of the loan term. Thus, at the end of the term, the consumer will owe a large lump-sum payment that is greater than the principal balance of the loan.

30. For such HOEPA-covered loans, the lender is required to provide the consumer, three business days before closing of the mortgage transaction, with specific disclosures, which must include the Annual Percentage Rate ("APR"), the amount of the regular monthly payment and the amount of any balloon payment, and the statement that the consumer could lose his or her home as a result of entering into the transaction ("HOEPA Disclosures").

31. In many instances, Silverstone Lending, Silverstone Financial, and Keystone Financial failed to provide the HOEPA Disclosures three business days in advance of closing, in violation of HOEPA. Moreover, Silverstone Lending, Silverstone Financial, and Keystone Financial's HOEPA Disclosures routinely failed to disclose the accurate APR of the loan and the existence of the balloon payment for its HOEPA-covered six-month balloon loans.

32. In addition to the HOEPA disclosures, the Truth in Lending Act requires a creditor to provide the consumer, prior to consummation of a loan transaction, with written disclosures of certain loan terms, including the annual percentage rate, finance charge, and payment schedule (as defined in Section 226.18 of Regulation Z, 12 C.F.R. § 226.18 ("TILA Disclosures"). On numerous occasions, Silverstone Lending, Silverstone Financial, and Keystone Financial grossly understated the APR and finance charge on the TILA disclosures provided to borrowers. For example, in many loans, the disclosed APR was 28% but the

10

actual APR was greater than 100%.

33.　At all times relevant to this Complaint, defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. §44.

## COUNT ONE

### Asset-Based Lending

34.　In the course and conduct of offering and making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial have engaged in a pattern or practice of extending credit to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income.

35.　By engaging in a pattern or practice of making HOEPA loans without regard to the consumer's repayment ability, as described in Paragraph 34, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section 226.34(a)(4) of Regulation Z, 12 C.F.R. § 226.34(a)(4).

## COUNT TWO

### Prohibited Balloon Payment

36.　In the course and conduct of making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, have included a prohibited "balloon payment" provision in six-month balloon loans.

37.　By including a prohibited "balloon payment" provision in short-term HOEPA

11

mortgage loans, as described in Paragraph 36, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Section 129(e) of TILA, 15 U.S.C. § 1639(e), and Sections 226.32(d)(1) of Regulation Z, 12 C.F.R. § 226.32(d)(1).

## COUNT THREE

### Prohibited Negative Amortization

38. In the course and conduct of making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, have included a prohibited "negative amortization" provision in six-month balloon loans.

39. By including a prohibited "negative amortization" provision in HOEPA mortgage loans, as described in Paragraph 38, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Sections 129(f) of TILA, 15 U.S.C. § 1639(f) and Section 226.32(d)(2) of Regulation Z, 12 C.F.R. § 226.32(d)(2).

## COUNT FOUR

### HOEPA Disclosure Violations

40. In the course and conduct of making mortgage loans, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, violate the requirements of HOEPA and Regulation Z in the following respects by:

    (a) failing to disclose, or accurately disclose:

        (i) the annual percentage rate, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(2) of Regulation Z, 12 C.F.R. § 226.32(c)(2); and

12

   (ii) the amount of any balloon payment, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(3) of Regulation Z, 12 C.F.R. § 226.32(c)(3); and

 (b) failing to furnish the disclosures described in Paragraph 40(a)(i) and (ii) above clearly and conspicuously in writing at least three business days prior to consummation of a HOEPA mortgage loan transaction, in violation of Section 129(b)(1) of TILA, 15 U.S.C. § 1639(b)(1), and Section 226.31(b) and (c)(1) of Regulation Z, 12 C.F.R. § 226.31(b) and (c)(1).

## COUNT FIVE

### Deceptive Representations

41. In the course and conduct of making mortgage loans, Defendants Safe Harbour Foundation, Silverstone Lending, Silverstone Financial, Keystone Financial, Porcelli, Harris, and Tomasulo, in numerous instances, represented to consumers that the effective interest rates ("APRs") on the loans would be 28% or less.

42. In truth and in fact, in numerous instances, the APRs on these loans were substantially greater than 28%.

43. Therefore, the Defendants' representations as set forth in Paragraph 41 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

13

## COUNT SIX

### TILA Disclosure Violations

44.  In the course and conduct of making mortgage loans, Defendants Silverstone Lending, Silverstone Financial, Keystone Financial, Southeast Advertising and MT25 LLC, in numerous instances violate the requirements of TILA and Regulation Z in the following and other respects by:

    (a)    failing to make required TILA disclosures in writing before consummation of a consumer credit transaction, in violation of Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and 1638(b)(1), and Sections 226.17(a) and (b) and 226.18 of Regulation Z, 12 C.F.R. §§ 226.17(a) and (b) and 226.18; and

    (b)    failing to disclose, or accurately disclose, the following information:

        (i)    the amount financed, in violation of Section 128(a)(2) of TILA, 15 U.S.C. § 1638(a)(2), and Section 226.18(b) of Regulation Z, 12 C.F.R. § 226.18(b);

        (ii)    the finance charge, in violation of Sections 106 and 128(a)(3) of TILA, 15 U.S.C. §§ 1605 and 1638(a)(3), and Sections 226.4 and 226.18(d) of Regulation Z, 12 C.F.R. §§ 226.4 and 226.18(d);

        (iii)    the annual percentage rate, in violation of Sections 107 and 128(a)(4) of TILA, 15 U.S.C. §§ 1606 and 1638(a)(4), and

        Sections 226.18(e) and 226.22 of Regulation Z, 12 C.F.R. §§ 226.18(e) and 226.22;

(iv)    the payment schedule, in violation of Section 128(a)(6) of TILA, 15 U.S.C. § 1638(a)(6), and Section 226.18(g) of Regulation Z, 12 C.F.R. § 226.18(g);

(v)    the total of payments, in violation of Section 128(a)(5) of TILA, 15 U.S.C. § 1638(a)(5), and Section 226.18(h) of Regulation Z, 12 C.F.R. § 226.18(h); and

(vi)    the fact that the creditor has or will acquire a security interest in the consumer's principal dwelling, in violation of Section 128(a)(9) of TILA, 15 U.S.C. § 1638(a)(9), and Section 226.18(m) of Regulation Z, 12 C.F.R. § 226.18(m).

### Injury

45.    Consumers have suffered, and will continue to suffer, substantial injury as a result of defendants' violations of HOEPA, TILA, and Section 5(a) of the FTC Act, as set forth above.

### This Court's Power to Grant Relief

46.    This Court has authority pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 108(c) of TILA, 15 U.S.C. § 1607(c), and its own inherent equitable powers, to grant injunctive relief to prevent and remedy violations of any provision of law enforced by the Commission. Defendants' violations of HOEPA, TILA, and Section 5(a) of the FTC

15

Act have injured consumers and, absent injunctive and other relief by this Court, are likely to continue to injure consumers and harm the public interest.

### Prayer For Relief

WHEREFORE, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 108(c) of TILA, 15 U.S.C. § 1607(c), and the Court's own equitable powers, requests that the Court:

(1) Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, and immediate access;

(2) Enter a permanent injunction to prevent future violations of HOEPA, TILA, and Regulation Z, and Section 5(a) of the FTC Act;

(3) Award such relief as the Court finds necessary to prevent unjust enrichment and to redress injury to consumers, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

(4) Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | WILLIAM BLUMENTHAL<br>General Counsel |
| DATED: February 27, 2008 | /s/ David A. O'Toole<br>DAVID A. O'TOOLE<br>GUY G. WARD<br>MARISSA J. REICH<br>Federal Trade Commission<br>55 West Monroe Street, Ste. 1825<br>Chicago, Illinois 60603<br>(312) 960-5634 [telephone]<br>(312) 960-5600 [facsimile]<br>dotoole@ftc.gov<br>gward@ftc.gov |

17