**U.S. Department of Justice**
**United States Marshals Service**

## PROCESS RECEIPT AND RETURN
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Federal Trade Commission | 08C1185 |
| DEFENDANT | TYPE OF PROCESS |
| Safe Harbour Foundation of Florida, Inc., et al. | Alias S/C |

| SERVE ➡ AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | Safe Harbour Foundation of Florida, Inc., C/O Peter J. Porcelli, II |
| | ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code) |
| | Fort Dix Federal Correction Institute, 5756 Hartford & Pointville Rd., Fort Dix, NJ |

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

David A. O'Toole
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL 60603

| | |
|---|---|
| Number of process to be served with this Form - 285 | 1 |
| Number of parties to be served in this case | 2 |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Fold

08640

**FILED**

JUN 2 0 2008  YM

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| Signature of Attorney or other Originator requesting service on behalf of: | XX PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER | DATE 05-06-08 |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process 1 of 2 | District of Origin No. 24 | District to Serve No. B50 | Signature of Authorized USMS Deputy or Clerk   Td | Date 05-06-08 |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☑ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|---|
| Address (complete only if different than shown above) NOT SERVED | | Date of Service | Time | am pm |
| | | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee 4.60 | Total Charges 4.60 | Advance Deposits | Amount owed to U.S. Marshal or 4.60. | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS: 5/29/08 SubJect is currently in-transit and is not housed at Fort Dix

| PRIOR EDITIONS MAY BE USED | **1. CLERK OF THE COURT** | FORM USM-285 (Rev. 12/15/88) |
|---|---|---|

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

Federal Trade Commission
v.
Safe Harbour Foundation of Florida, Inc.,
Silverstone Lending LLC, Silverstone
Financial, LLC, Keystone Financial, LLC,
Southeast Advertising, Inc., MT 25 LLC,
Peter J. Porcelli, II, Bonnie Harris, and
Christopher Tomasulo

ALIAS  **SUMMONS IN A CIVIL CASE**

CASE NUMBER:        08-cv-1185

ASSIGNED JUDGE: J. GUZMAN

DESIGNATED
MAGISTRATE JUDGE: M.J. VALDEZ

*[stamp: RECEIVED UNITED STATES MARSHAL 2008 MAY -6 PH 4:05 NORTHERN DIST. OF IL. ADMINISTRATIVE SECTION]*

TO: (Name and address of Defendant)

Safe Harbour Foundation of Florida, Inc.
c/o Peter J. Porcelli, II
Fort Dix Federal Correction Institute
5756 Hartford & Pointville Road
Fort Dix, NJ 08640

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

David A. O'Toole
Federal Trade Commission
55 W. Monroe St., Suite 1825
Chicago, IL  60603

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

*Janette Nuñez*
(By) DEPUTY CLERK

**MAY 0 5 2008**

DATE

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                    Date                        *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**08 C 1185**

**FILED**

**FEBRUARY 27, 2008**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE GUZMAN**
**MAGISTRATE JUDGE VALDEZ**

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Civ. No. |
| v. | ) |
| | ) |
| SAFE HARBOUR FOUNDATION OF | ) **COMPLAINT FOR INJUNCTIVE** |
| FLORIDA, INC., a Florida corporation, | ) **AND OTHER EQUITABLE** |
| | ) **RELIEF. N.** |
| SILVERSTONE LENDING, LLC, a Florida | ) |
| limited liability company, | ) |
| | ) |
| SILVERSTONE FINANCIAL LLC, a Florida | ) |
| limited liability company, | ) |
| | ) |
| KEYSTONE FINANCIAL, LLC, a Nevada | ) |
| limited liability company, | ) |
| | ) |
| SOUTHEAST ADVERTISING, INC., a Florida | ) |
| corporation, | ) |
| | ) |
| MT25 LLC, a Nevada limited liability company, | ) |
| | ) |
| PETER J. PORCELLI, II, | ) |
| individually and as officer, partner, or | ) |
| member of Silverstone Lending, LLC, | ) |
| Silverstone Financial LLC, and Safe | ) |
| Harbour Foundation of Florida, Inc. | ) |
| | ) |
| BONNIE A. HARRIS, | ) |
| individually, and as a manager of Safe | ) |
| Harbour Foundation of Florida, Inc. | ) |
| | ) |
| CHRISTOPHER TOMASULO, | ) |
| individually and as a manager of Safe | ) |
| Harbour Foundation of Florida, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |



RECEIVED
UNITED STATES MARSHAL
2008 MAY -6  PM 4: 05
NORTHERN DIST. OF IL.
ADMINISTRATIVE SECTION

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its complaint, alleges as follows:

1.     This is an action under Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 53(b), and Section 108(c) of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1607(c), to obtain preliminary and permanent injunctive relief, rescission, restitution, reformation, disgorgement, and other equitable relief against defendants for engaging in acts or practices in violation of TILA, 15 U.S.C. §§ 1601-1666j, as amended, including, but not limited to, the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), as amended, and TILA's implementing Regulation Z, 12 C.F.R. Part 226, as amended, and for unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as amended.

2.     This Court has subject matter jurisdiction over this matter and personal jurisdiction over the defendants pursuant to 15 U.S.C. §§ 45(a), 53(b), and 1607(c), and 28 U.S.C. §§ 1331, 1337(a), and 1345.

3.     Venue in the United States District Court for the Northern District of Illinois is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

## Parties

4.     Plaintiff, the Commission, is an independent agency of the United States Government created and given statutory authority and responsibility by the FTC Act, as amended, 15 U.S.C. §§ 41-58. The Commission is charged, inter alia, with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or

2

practices in or affecting commerce, and TILA, which grants to consumers certain substantive rights in consumer credit transactions. The Commission is authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 108(c) of TILA, 15 U.S.C. § 1607(c), to initiate federal district court proceedings to enjoin violations of the FTC Act, TILA, HOEPA, and Regulation Z and to secure such equitable relief as may be appropriate in each case including, but not limited to, restitution and disgorgement.

## Defendants

5.    Defendant Safe Harbour Foundation of Florida, Inc. ("Safe Harbour") is a corporation organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

6.    Defendant Silverstone Lending, LLC ("Silverstone Lending"), is a limited liability company organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

7.    Defendant Silverstone Financial LLC ("Silverstone Financial") is a limited liability company organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Ste. A, Clearwater, Florida 33762.

8.    Defendant Keystone Financial, LLC, is a limited liability company organized, existing, and doing business under the laws of the State of Nevada. Rachael Cook is its

3

registered agent and the only manager identified with the Nevada Secretary of State. Its principal place of business is in Las Vegas, Nevada.

9.      At all times material herein, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial have been "creditors," as that term is defined in Section 103(f) of TILA, 15 U.S.C. § 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. § 226.2(a)(17), and therefore are required to comply with applicable provisions of TILA, HOEPA, and Regulation Z.

10.      Defendant Southeast Advertising, Inc., is a corporation organized, existing, and doing business under the laws of the State of Florida. Its principal place of business is at 12890 Automobile Blvd., Suite A, Clearwater, Florida 33762.

11.      Defendant MT25 LLC, is a limited liability company organized, existing, and doing business under the laws of the State of Nevada. Ival Sub Consulting is its registered agent and the only manager identified with the Nevada Secretary of State. Ivelina Stameva is the President, Secretary, Treasurer and Director of Ival Sub Consulting. MT25 LLC's principal place of business is in Henderson, Nevada. Ival Sub Consulting's principal place of business is in Las Vegas, Nevada.

12.      At all times material herein, Defendants Southeast Advertising and MT25 LLC have purchased or were assigned mortgage loans from Silverstone Lending, Silverstone Financial, and Keystone Financial and were "assignees" of such mortgage loans for purposes of Section 131 of TILA, 15 U.S.C. § 1641.

4

13.     Defendant Peter J. Porcelli, II, is a member, partner, and/or owner of Silverstone Lending and Silverstone Financial, and manages Safe Harbour. Individually or in concert with others, at all times material to this action, he has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

14.     Defendant Bonnie Harris is a manager of Silverstone Lending, Silverstone Financial, and Safe Harbour. Individually or in concert with others, at all times material to this action, she has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

15.     Defendant Christopher Tomasulo is a manager of Silverstone Lending, Silverstone Financial, and Safe Harbour. Individually or in concert with others, at all times material to this action, he has formulated, directed, controlled, supervised, and/or participated in the acts and practices of defendants Silverstone Lending, Silverstone Financial, and Safe Harbour, including the acts or practices set forth in this Complaint.

16.     Defendants Silverstone Lending, Silverstone Financial and Safe Harbour have operated as a common business enterprise while engaging in the acts and alleged practices.

## DEFENDANTS' BUSINESS PRACTICES

17.     On August 14, 2002, the FTC filed a complaint against Peter J. Porcelli, II, Bonnie Harris, Christopher Tomasulo and various corporate entities they controlled, in the

5

United States District Court for the Northern District of Illinois. On a motion by the FTC,

Judge Darrah entered a temporary restraining order with asset freeze and appointed a

receiver over the corporate entities on August 15, 2002. *FTC v. Bay Area Business Council,*

*Inc., et al.*, No. 02-C-5762 (N.D. Ill.).

    18.    On April 14, 2004, the Court in *FTC v. Bay Area Business Council, Inc., et*

*al.*, entered an order for permanent injunction and monetary relief against, *inter alia*,

defendants Porcelli and Harris, which ordered them to pay more than $12.5 million in

consumer redress to the FTC. Section two of the Order (at 6) also provides:

> Defendants are hereby permanently restrained and enjoined from promoting,
> offering for sale, or selling, directly or indirectly, Credit-Related Products to
> any consumer.

"Credit-Related Product" is defined by the Order (at 6) as:

> any product, program, or service which is advertised, offered for sale, or sold
> as a method by which persons may establish or obtain any extension of credit
> or credit device, including, but not limited to credit cards, loans, or financing,
> or as a method to consolidate or liquidate debts.

    19.    On February 2, 2005, the Court in *FTC v. Bay Area Business Council, Inc., et*

*al.*, entered a stipulated final judgment and order for permanent injunction as to Christopher

Tomasulo. Section one of that Order (at 5) provides:

> Defendant Christopher Tomasulo is hereby permanently restrained and
> enjoined from engaging in, participating in, or assisting in the Telemarketing,

6

advertising, promotion, offering for sale, or sale of Credit-Related Products to any consumer.

"Credit-Related Product" is defined by the Order (at 4) as:

any product, program, or service which is advertised, offered for sale, or sold as a method by which persons may establish or obtain any extension of credit or credit device, including, but not limited to credit cards, loans, or financing, or as a method to consolidate or liquidate debts.

20.    Since at least 2004, Defendants have maintained a substantial course of trade in offering and extending credit to consumers and others.

21.    Defendant Safe Harbour's articles of incorporation claim that it is designed to "help save homeowners from foreclosure by introducing them to lenders."

22.    Safe Harbour contacts homeowners facing foreclosure, typically by sending them a flyer in the mail. The flyer, under the heading "SAFE HARBOUR FOUNDATION, A NON PROFIT CORPORATION, FORECLOSURE RELIEF" states:

We have all the funds available to pay your bills

and save your home from foreclosure. GUARANTEED!

• Don't lose your home.

• Guaranteed solution to stay in your home.

• Immediate relief from financial pressures.

• Stop the harassment.

• Save your credit

7

23.    The Safe Harbour flyer goes on to describe Safe Harbour as "having been established to give people a second chance when no one else will." It warns consumers to "[b]e careful of other companies who look to profit from your misfortune."

24.    Safe Harbour does not itself provide the loans to homeowners; it arranges such loans with related for-profit lenders. In many instances, Safe Harbour arranges for consumers to obtain mortgage loans that are secured by the consumers' principal dwelling.

25.    All or nearly all of the loans secured by Safe Harbour for its clients are through Silverstone Financial, or Silverstone Lending, two companies also owned and operated by defendant Porcelli, or Keystone Financial, LLC.

26.    In many instances, the Silverstone lending entities assign the mortgages or deeds to each other, to Southeast Advertising, or to MT25 LLC.

27.    Many of the loans originated by Silverstone Lending, Silverstone Financial, and Keystone Financial are high-rate or high-fee loans covered by the Home Ownership and Equity Protection Act ("HOEPA"). The HOEPA applies to high-cost refinancing and home equity loans that are secured by the borrower's principal dwelling, including loans where (1) the annual percentage rate at consummation of the transaction will exceed (a) by more than 8 percentage points for first-lien loans, or (b) by more than 10 percentage points for subordinate-lien loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or (2) the total points and fees payable by the borrower will exceed the greater of $561 or 8% of the

total loan amount. If a loan qualifies as a high-cost loan under HOEPA, the lender is required to provide the consumer with specific disclosures at least three days before the loan is consummated; certain loan terms are prohibited; and specified practices are barred.

28.     In the course of offering and extending HOEPA loans to borrowers, Silverstone Lending, Silverstone Financial, and Keystone Financial have extended credit to a borrower based on the borrower's collateral without regard to the borrower's ability to pay. For example, Silverstone Lending, Silverstone Financial, and Keystone Financial often make loans to borrowers who are in default of their existing mortgages and face foreclosure. In many instances, Silverstone Lending, Silverstone Financial, and Keystone Financial make loans to these borrowers based on the equity in their homes without considering the borrower's current and expected income, current obligations, and employment status to determine whether the borrower is able to make the scheduled payments to repay the obligation.

29.     Many of Silverstone Lending's, Silverstone Financial's, and Keystone Financial's HOEPA loans are six-month loans requiring a large lump-sum "balloon" payment at the end of five regularly scheduled monthly payments ("six-month balloon loans"). The six-month balloon loans are typically "negative amortization" loans with a note interest rate of 18% with monthly "interest only" payments that are computed at a rate of 12%. All accrued and unpaid interest that is not included in the regular monthly payment is added to the principal balance of the loan that must be paid in one lump-sum balloon

9

payment at the end of the loan term. Thus, at the end of the term, the consumer will owe a large lump-sum payment that is greater than the principal balance of the loan.

30.    For such HOEPA-covered loans, the lender is required to provide the consumer, three business days before closing of the mortgage transaction, with specific disclosures, which must include the Annual Percentage Rate ("APR"), the amount of the regular monthly payment and the amount of any balloon payment, and the statement that the consumer could lose his or her home as a result of entering into the transaction ("HOEPA Disclosures").

31.    In many instances, Silverstone Lending, Silverstone Financial, and Keystone Financial failed to provide the HOEPA Disclosures three business days in advance of closing, in violation of HOEPA. Moreover, Silverstone Lending, Silverstone Financial, and Keystone Financial's HOEPA Disclosures routinely failed to disclose the accurate APR of the loan and the existence of the balloon payment for its HOEPA-covered six-month balloon loans.

32.    In addition to the HOEPA disclosures, the Truth in Lending Act requires a creditor to provide the consumer, prior to consummation of a loan transaction, with written disclosures of certain loan terms, including the annual percentage rate, finance charge, and payment schedule (as defined in Section 226.18 of Regulation Z, 12 C.F.R. § 226.18 ("TILA Disclosures"). On numerous occasions, Silverstone Lending, Silverstone Financial, and Keystone Financial grossly understated the APR and finance charge on the TILA disclosures provided to borrowers. For example, in many loans, the disclosed APR was 28% but the

10

actual APR was greater than 100%.

33.    At all times relevant to this Complaint, defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. §44.

## COUNT ONE

### Asset-Based Lending

34.    In the course and conduct of offering and making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial have engaged in a pattern or practice of extending credit to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income.

35.    By engaging in a pattern or practice of making HOEPA loans without regard to the consumer's repayment ability, as described in Paragraph 34, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Section 129(h) of TILA, 15 U.S.C. § 1639(h), and Section 226.34(a)(4) of Regulation Z, 12 C.F.R. § 226.34(a)(4).

## COUNT TWO

### Prohibited Balloon Payment

36.    In the course and conduct of making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, have included a prohibited "balloon payment" provision in six-month balloon loans.

37.    By including a prohibited "balloon payment" provision in short-term HOEPA

mortgage loans, as described in Paragraph 36, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Section 129(e) of TILA, 15 U.S.C. § 1639(e), and Sections 226.32(d)(1) of Regulation Z, 12 C.F.R. § 226.32(d)(1).

## COUNT THREE

### Prohibited Negative Amortization

38.　　In the course and conduct of making HOEPA mortgage loans, defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, have included a prohibited "negative amortization" provision in six-month balloon loans.

39.　　By including a prohibited "negative amortization" provision in HOEPA mortgage loans, as described in Paragraph 38, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, violate Sections 129(f) of TILA, 15 U.S.C. § 1639(f) and Section 226.32(d)(2) of Regulation Z, 12 C.F.R. § 226.32(d)(2).

## COUNT FOUR

### HOEPA Disclosure Violations

40.　　In the course and conduct of making mortgage loans, Defendants Silverstone Lending, Silverstone Financial, and Keystone Financial, in numerous instances, violate the requirements of HOEPA and Regulation Z in the following respects by:

　　　　(a)　　failing to disclose, or accurately disclose:

　　　　　　　　(i)　　the annual percentage rate, in violation of Section 129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section 226.32(c)(2) of Regulation Z, 12 C.F.R. § 226.32(c)(2); and

(ii)    the amount of any balloon payment, in violation of Section

129(a)(2) of TILA, 15 U.S.C. § 1639(a)(2), and Section

226.32(c)(3) of Regulation Z, 12 C.F.R. § 226.32(c)(3); and

(b)    failing to furnish the disclosures described in Paragraph 40(a)(i) and

(ii) above clearly and conspicuously in writing at least three business

days prior to consummation of a HOEPA mortgage loan transaction,

in violation of Section 129(b)(1) of TILA, 15 U.S.C. § 1639(b)(1), and

Section 226.31(b) and (c)(1) of Regulation Z, 12 C.F.R. § 226.31(b)

and (c)(1).

## COUNT FIVE

### Deceptive Representations

41.    In the course and conduct of making mortgage loans, Defendants Safe

Harbour Foundation, Silverstone Lending, Silverstone Financial, Keystone Financial,

Porcelli, Harris, and Tomasulo, in numerous instances, represented to consumers that the

effective interest rates ("APRs") on the loans would be 28% or less.

42.    In truth and in fact, in numerous instances, the APRs on these loans were

substantially greater than 28%.

43.    Therefore, the Defendants' representations as set forth in Paragraph 41 are

false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a).

13

## COUNT SIX

### TILA Disclosure Violations

44.   In the course and conduct of making mortgage loans, Defendants Silverstone

Lending, Silverstone Financial, Keystone Financial, Southeast Advertising and MT25 LLC,

in numerous instances violate the requirements of TILA and Regulation Z in the following

and other respects by:

(a)   failing to make required TILA disclosures in writing before

consummation of a consumer credit transaction, in violation of

Sections 121(a) and 128(b)(1) of TILA, 15 U.S.C. §§ 1631(a) and

1638(b)(1), and Sections 226.17(a) and (b) and 226.18 of Regulation

Z, 12 C.F.R. §§ 226.17(a) and (b) and 226.18; and

(b)   failing to disclose, or accurately disclose, the following information:

(i)   the amount financed, in violation of Section 128(a)(2) of

TILA, 15 U.S.C. § 1638(a)(2), and Section 226.18(b) of

Regulation Z, 12 C.F.R. § 226.18(b);

(ii)   the finance charge, in violation of Sections 106 and 128(a)(3)

of TILA, 15 U.S.C. §§ 1605 and 1638(a)(3), and Sections

226.4 and 226.18(d) of Regulation Z, 12 C.F.R. §§ 226.4

and 226.18(d);

(iii)   the annual percentage rate, in violation of Sections 107 and

128(a)(4) of TILA, 15 U.S.C. §§ 1606 and 1638(a)(4), and

14

Sections 226.18(e) and 226.22 of Regulation Z, 12 C.F.R.
§§ 226.18(e) and 226.22;

(iv)   the payment schedule, in violation of Section 128(a)(6) of
TILA, 15 U.S.C. § 1638(a)(6), and Section 226.18(g) of
Regulation Z, 12 C.F.R. § 226.18(g);

(v)   the total of payments, in violation of Section 128(a)(5) of
TILA, 15 U.S.C. § 1638(a)(5), and Section 226.18(h) of
Regulation Z, 12 C.F.R. § 226.18(h); and

(vi)   the fact that the creditor has or will acquire a security interest
in the consumer's principal dwelling, in violation of Section
128(a)(9) of TILA, 15 U.S.C. § 1638(a)(9), and Section
226.18(m) of Regulation Z, 12 C.F.R. § 226.18(m).

## Injury

45.   Consumers have suffered, and will continue to suffer, substantial injury as a
result of defendants' violations of HOEPA, TILA, and Section 5(a) of the FTC Act, as set
forth above.

## This Court's Power to Grant Relief

46.   This Court has authority pursuant to Section 13(b) of the FTC Act, 15 U.S.C.
§ 53(b), Section 108(c) of TILA, 15 U.S.C. § 1607(c), and its own inherent equitable powers,
to grant injunctive relief to prevent and remedy violations of any provision of law enforced
by the Commission. Defendants' violations of HOEPA, TILA, and Section 5(a) of the FTC

15

Act have injured consumers and, absent injunctive and other relief by this Court, are likely to continue to injure consumers and harm the public interest.

### Prayer For Relief

WHEREFORE, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 108(c) of TILA, 15 U.S.C. § 1607(c), and the Court's own equitable powers, requests that the Court:

(1)    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including, but not limited to, temporary and preliminary injunctions, an order freezing assets, and immediate access;

(2)    Enter a permanent injunction to prevent future violations of HOEPA, TILA, and Regulation Z, and Section 5(a) of the FTC Act;

(3)    Award such relief as the Court finds necessary to prevent unjust enrichment and to redress injury to consumers, including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

(4)    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

16

Respectfully Submitted,

WILLIAM BLUMENTHAL
General Counsel

DATED: February 27, 2008

/s/ David A. O'Toole
DAVID A. O'TOOLE
GUY G. WARD
MARISSA J. REICH
Federal Trade Commission
55 West Monroe Street, Ste. 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
dotoole@ftc.gov
gward@ftc.gov

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02-C-5762 |
| v. | ) | Judge John W. Darrah |
| | ) | Magistrate Judge Ashman |
| BAY AREA BUSINESS COUNCIL, INC., | ) | |
| a Florida corporation, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF MOTION

**TO:  See Attached Service List**

PLEASE TAKE NOTICE that on March 12, 2008, at 9:00 a.m., or as soon thereafter as

counsel may be heard, Plaintiff Federal Trade Commission will appear before the Honorable

Judge John W. Darrah, in his courtroom at 219 South Dearborn Street, in Chicago, Illinois, and

present the FTC's Motion For Order To Show Cause Why Defendants And Respondents Should

Not Be Held In Contempt, copies of which are attached hereto and are hereby served on you.

Respectfully Submitted,

WILLIAM BLUMENTHAL
General Counsel

DATED: February 27, 2008

/s/ David A. O'Toole
DAVID A. O'TOOLE
GUY G. WARD
Federal Trade Commission
55 West Monroe Street, Ste. 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
dotoole@ftc.gov
gward@ftc.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02-C-5762 |
| v. | ) | Judge John W. Darrah |
| | ) | Magistrate Judge Ashman |
| BAY AREA BUSINESS COUNCIL, INC., | ) | |
| a Florida corporation, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## FTC'S MOTION FOR ORDER TO SHOW CAUSE WHY
## DEFENDANTS AND RESPONDENTS SHOULD NOT BE HELD IN CONTEMPT

Plaintiff Federal Trade Commission ("FTC" or "Commission") moves this Court for an order to show cause why defendants Peter J. Porcelli, II, Bonnie A. Harris, and Christopher Tomasulo, and respondents Thomas C. Little, Safe Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial LLC, should not be held in civil contempt for violating the Order for Permanent Injunction with Monetary Judgment and Other Relief Against Bay Area Business Council, Inc., Bay Area Business Council Customer Service Corp., American Leisure Card Corp., Bay Memberships, Inc., Sr. Marketing Consultants, Inc., Special Technologies, Inc., Peter J. Porcelli, II, and Bonnie A. Harris, dated April 14, 2004, and the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendant Christopher Tomasulo, dated February 2, 2005.

Support for the Commission's motion is set forth in the accompanying Memorandum of Law and in 3 volumes of declarations and exhibits filed herewith. The Commission ultimately seeks in this action an order holding the defendants and respondents in civil contempt, enjoining their unlawful practices, and providing relief to consumer victims.

The Commission also has filed, on even date, a new action in this district, styled *FTC v. Safe Harbour Foundation of Florida, Inc., et al.*, alleging that the defendants and others have violated several key provisions of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601-1666j, and Section Five of the FTC Act, 15 U.S.C. § 45. Because the newly filed action and the instant motion are based largely on the same facts, and involve many of the same parties, the Commission will file a separate motion seeking reassignment of *FTC v. Safe Harbour Foundation of Florida, Inc., et al.*, to this Court.

WHEREFORE, plaintiff Federal Trade Commission respectfully requests that the Court enter an order to show cause why defendants Peter J. Porcelli, II, and Bonnie A. Harris, and respondents Thomas C. Little, Safe Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial, LLC, should not be held in civil contempt for violating the Court's Order for Permanent Injunction with Monetary Judgment and Other Relief Against Bay Area Business Council, Inc., Bay Area Business Council Customer Service Corp., American Leisure Card Corp., Bay Memberships, Inc., Sr. Marketing Consultants, Inc., Special Technologies, Inc., Peter J. Porcelli, II, and Bonnie A. Harris, dated April 14, 2004; and enter an order to show cause why defendant Christopher Tomasulo and respondents Thomas C. Little, Safe Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial, LLC, should not be held in civil contempt for violating the Court's Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendant Christopher Tomasulo, dated February 2, 2005.

-2-

Respectfully Submitted,

WILLIAM BLUMENTHAL
General Counsel

DATED: February 27, 2008

/s/ David A. O'Toole
DAVID A. O'TOOLE
GUY G. WARD
Federal Trade Commission
55 West Monroe Street, Ste. 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
dotoole@ftc.gov
gward@ftc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02-C-5762 |
| v. | ) | Judge John W. Darrah |
| | ) | Magistrate Judge Ashman |
| BAY AREA BUSINESS COUNCIL, INC., | ) | |
| a Florida corporation, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## FTC'S MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS AND RESPONDENTS SHOULD NOT BE HELD IN CONTEMPT

Under the guise of a supposed mortgage foreclosure rescue operation, defendant Peter J. Porcelli, II, and his confederates have not only found a new lucrative method to scam financially troubled consumers, they have blatantly and systematically violated this Court's permanent injunction orders entered in April 2004 and February 2005. Plaintiff, Federal Trade Commission, moves for an order to show cause why defendants Porcelli, Bonnie Harris, and Christopher Tomasulo, and respondents Thomas C. Little, Safe Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial LLC, should not be held in contempt.[1]

Porcelli and his confederates have engaged in wholesale violations of the permanent injunctions entered by this Court: they saw an opportunity to take advantage of the growing

---

[1]    Concurrent with the filing of this motion, the FTC is filing a new action in this district, styled *FTC v. Safe Harbour Foundation of Florida, Inc., et al.*, alleging that the defendants' new operation, along with the non-party respondents to this motion and other non-parties, have violated several key provisions of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601-1666j, and Section Five of the FTC Act, 15 U.S.C. § 45. Because of vast overlap in both subject matter and potential remedies in the two cases, the FTC intends to file a separate motion seeking reassignment of *FTC v. Safe Harbour Foundation of Florida, Inc., et al.*, to this Court.

number of distressed homeowners who are facing foreclosure.[2]  But just like the illusory credit

card scam in which consumers paid $200 for nothing, resulting in this Court's order granting the

FTC's motion for summary judgment on April 8, 2004,[3] the new enterprise promised affordable

loans to troubled homeowners and instead charged them exorbitant fees on extremely high

interest rate loans, forcing most of the homeowners into even deeper debt.  Even more

outrageous is that this Court's prior orders permanently banned the principals from any

involvement in an enterprise which extends credit to consumers.  For this reason and to prevent

further consumer injury and asset dissipation, we are asking that the Court take all necessary

actions to coerce the defendants' and respondents' compliance with the Court's permanent

injunctions, including requiring the contemnors to return all monies they received in connection

with their mortgage operations, and enjoining them from foreclosing on or taking any further

damaging actions with respect to their loans to homeowners.

## I.    PROCEDURAL HISTORY

In August 2002, the FTC filed its complaint against Porcelli, Bonnie A. Harris,

Christopher Tomasulo and various corporate defendants based on their operation of an advance

fee credit card scam in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which

prohibits "unfair or deceptive acts or practices in or affecting trade or commerce," as well as the

Commission's Telemarketing Sales Rule, 16 C.F.R. Part 310.  The defendants misled tens of

thousands of reasonable consumers into believing they would receive a credit card, although the

---

[2]      More than 2.2 million foreclosures were filed in the U.S. in 2007, a 75% increase over 2006.  *See* Statement of the Federal Trade Commission on Foreclosure Rescue Fraud before the U.S. Senate Special Committee on Aging (Feb. 13, 2008), available at http://www.ftc.gov/os/testimony/P064814foreclosure.pdf.

[3]      Docket No. 112 ("Summary Judgment Op.").

defendants never could, and never intended to, provide credit cards to anyone.[4] The defendants also failed to disclose the additional fees they would charge consumers for a "pay-as-you-go 'Mastercard'" – a form of debit card – and falsely promised consumers that purchasing this card would boost the consumers' credit ratings, even though the use of such a card was never reported to credit bureaus.[5] In all, defendants bilked consumers out of at least $12.5 million.[6]

The FTC initially sought, and this Court entered, a temporary restraining order, including an asset freeze as to each defendant, and the appointment of a receiver over the corporate entities, in August 2002.[7] After protracted litigation, including bankruptcy filings by various defendants and an attempted "removal" to federal district court in Florida, this court entered judgment against all defendants except for Tomasulo.[8] On April 14, 2004, the Court entered an Order for Permanent Injunction with Monetary Judgment and Other Relief Against Bay Area Business Council, Inc., Bay Area Business Council Customer Service Corp., American Leisure Card Corp., Bay Memberships, Inc., Sr. Marketing Consultants, Inc., Special Technologies, Inc., Peter J. Porcelli, II, and Bonnie Harris (the "Porcelli/Harris Order").[9] In addition to ordering redress in the amount of the operation's total net sales, the Porcelli/Harris Order provides for broad permanent injunctive relief, including banning the defendants from telemarketing and

---

[4]    *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005) (affirming this Court).

[5]    *Id.* at 636.

[6]    *See* Summary Judgment Op. at 25.

[7]    Docket No. 3.

[8]    Tomasulo was already engaged in settlement negotiations with the FTC prior to the FTC's filing of its motion for summary judgment, so he was not included as a respondent.

[9]    Docket No. 114, PX 209.

marketing credit-related products.[10] The Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendant Christopher Tomasulo (the "Tomasulo Order") was entered by the Court on February 2, 2005.[11] Although the wording of the key provisions are not identical in the two orders, all the defendants are banned from involvement in the marketing or sale of "Credit-Related Products" to consumers.

In a unanimous opinion, the Seventh Circuit Court of Appeals affirmed the Court's summary judgment ruling in August 2005, including its ruling that Porcelli and Harris should be held jointly and severally liable for the redress award.[12] Porcelli was then criminally prosecuted for the same conduct, entering a guilty plea and receiving a sentence of 156 months incarceration in October 2007.[13] Porcelli began serving his sentence in early 2008.

## II.    RESPONDENTS' CONTEMPTUOUS CONDUCT

Within months of being banned from having any involvement in advertising, promoting, or selling Credit-Related Products, Porcelli began his new mortgage foreclosure operation. Porcelli continued to run this new scam until he entered federal prison and its operations

---

[10]    Defendants have made no efforts to comply with the monetary award in the Porcelli/Harris Order. Although the Court ordered redress of $12,563,962.34, the FTC to date has received only $110,000, and that sum did not come directly from the defendants. The bulk of that amount came from a distribution of monies paid by Porcelli to the Chapter 7 Trustee in the case *In re Peter J. Porcelli, II*, Case No. 03-04075 (M.D. Fla. Bankr.) to settle claims that he misrepresented his assets in his bankruptcy filing. The remaining amount paid to the FTC came from the Chapter 7 Trustee as a distribution in the case of one of the corporate defendants, *In re Bay Memberships, Inc.*, Case No. 02-21694 (M.D. Fla. Bankr.).

[11]    Docket No. 124, PX 210.

[12]    *FTC v. Bay Area Business Council, Inc.*, 423 F.3d 627, 635 (7th Cir. 2005).

[13]    *US v. Porcelli*, No. 3:07-cr-30037-WDS (S.D. Ill.), PX 212.

continue today.  Porcelli set up a web of corporate entities, as he did with the credit card scam,[14]

and he has operated this business through at least three corporations which he owns or controls:

Safe Harbour Foundation of Florida, Inc., Silverstone Financial LLC, and Silverstone Lending,

LLC.[15]  Both Bonnie Harris and Christopher Tomasulo, his codefendants in this case, have been

actively involved with the new operations.

Safe Harbour targets distressed homeowners, claiming in its articles of incorporation that

it is a non-profit designed to "help save homeowners from foreclosure by introducing them to

lenders."[16]  Obtaining lists of homeowners facing foreclosure, Safe Harbour contacts consumers,

typically by sending them a flyer in the mail. The flyer, under the heading "SAFE HARBOUR

FOUNDATION, A NON PROFIT CORPORATION, FORECLOSURE RELIEF" states:

> We have all the funds available to pay your bills
>
> and save your home from foreclosure. GUARANTEED!
>
> • Don't lose your home.
>
> • Guaranteed solution to stay in your home.
>
> • Immediate relief from financial pressures.
>
> • Stop the harassment.
>
> • Save your credit

---

[14]    Summary Judgment Op. at 12, 15.

[15]    Safe Harbour and Silverstone Financial were incorporated in December 2004.
Silverstone Lending was incorporated in June 2005.  Porcelli owns and, at least until he entered a
federal penitentiary on January 28, 2008, controlled all three corporations.  It should be noted
that Safe Harbour is not, and never has been, qualified as a tax exempt entity pursuant to Section
501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), and it seems to have no function
other than steering consumers to Porcelli's for-profit lending companies.

[16]    *See* PX 214 (McKenney Decl.) Att. D.

-5-

The flyer goes on to describe Safe Harbour as "having been established to give people a second chance when no one else will."[17] It warns consumers to "[b]e careful of other companies who look to profit from your misfortune." Continuing the same theme, the bottom of the flyer warns homeowners to watch out for "Investment Sharks," "Quick Money offers," and to not "Keep Swimming," i.e., "think . . . this will work itself out." The flyer directs homeowners to call "Peter James" (a pseudonym Porcelli has used in the past) at a toll-free number.

Homeowners who call Safe Harbour usually reach either Bonnie Harris or Porcelli. Safe Harbour obtains payoff letters, foreclosure information, and other relevant information about the property itself, but it does nothing to determine whether the homeowners have the means to pay back a new loan; it does not perform any type of credit check or even determine the homeowners' income before moving forward on the loans.[18]

The loans to consumers are made and secured by Silverstone Financial or Silverstone Lending, two companies also controlled by Porcelli, which have had the same address and are otherwise indistinguishable from Safe Harbour.[19] Thomas Little, Porcelli's lawyer in the later

---

[17]   *See Heise v. Porcelli, et al.*, No. 8:07-cv-1866-T-24 MAP (M.D. Fla.) (attachment to complaint), PX 213.

[18]   *See* PX 214 (McKenney Decl.) Atts. G(2), H(2), I(17), J(20-21), K(2), L(24), M(17), N(17), O(19), P(16), Q(13), R(16), S(2), T(2), U(23), V(17), X(15), Y(17), Z(15), AA(15), BB(16), CC(15), DD(15), EE(17), HH(2), II(16), JJ(16), KK(16), LL(15), MM(15), NN(15), OO(18), PP(15), QQ(2), RR(2), SS(15), UU(16), VV(15), WW(16), XX(15), YY(16), AAA(2), BBB(13), CCC(14), DDD(15), EEE(17) (intake forms).

[19]   *See* PX 214 (McKenney Decl.) Atts. I(7-12), J(8-12), L(8-12), M(8-12), N(8-12), O(8-12), P(8-12), Q(8-12), R(8-12), U(8-12), V(8-12), W(8-11, 20-24), X(8-11), Y(6-13), Z(8-11), AA(8-11), BB(8-11), CC(8-11), DD(8-11), EE(8-11), FF(8-11), GG(8-12), II(8-11), JJ(8-11), KK(8-11), LL(8-11), MM(8-11), NN(8-11), OO(8-11), PP(8-11), SS(8-11), TT(7-10), UU(8-12), VV(8-11), WW(8-11), XX(8-11), YY(8-11), ZZ(5-9), BBB(8-11), CCC(8-11), DDD(8-11), EEE(8-11) (notes and mortgages).

years of this litigation, has prepared the legal documents for most of the transactions, collecting a

$400 "title escrow fee" from the consumers.[20]

While the amounts of the loans vary based on the current indebtedness of the consumers,

the loans are otherwise essentially identical. Consumers receive loans that permit them to bring

their current mortgages up to date, avoid foreclosure, and (at least temporarily) stay in their

homes. The loans all have a term of six months or less, and are secured as second mortgages.[21]

All the loans are negatively amortized, i.e., they provide for interest-only payments with a

balloon payment to pay off all the principal and unpaid interest on the due date.[22] In most if not

all cases, the loans are made to look even more attractive to the homeowners by deferring much

of the interest until the loan term ends.[23] All the loans include hefty fees to Safe Harbour and the

lender (usually Silverstone Lending).[24] Substantial "underwriting" fees also are charged by third

parties which seem to provide nothing of value to the consumers,[25] although some of the third

---

[20]    PX 214 (McKenney Decl.) Atts. I(13), L(13), M(13), O(13), Q(2), R(13), U(13),
V(24), W(12, 29), Y(14, 21), Z(12, 22), AA(12, 18, 20), DD(12, 24), EE(12-13), FF(12, 21, 23),
GG(13, 18-19, 21), JJ(12, 27), KK(12), LL(21), MM(12, 21, 23), NN(12, 24, 26), OO(12, 21,
23), PP(12), SS(12, 21, 23), WW(12, 23, 25), YY(20), BBB(12, 19), CCC(12, 22, 24), DDD(12,
22, 24), EEE(12, 23), FFF(7, 9), HHH(2), JJJ(4, 6, 8, 13), KKK(7).

[21]    *Supra note* 19.

[22]    *Id.*

[23]    *Id.*

[24]    *See* PX 214 (McKenney Decl.) Atts. I(3), J(3), L(3), M(3), N(3), O(3), P(3), Q(3),
R(3), U(3), V(3), W(3), X(3), Y(3), Z(3), AA(3), BB(3), CC(3), DD(3), EE(3), FF(3), GG(3),
II(3), JJ(3), KK(3), LL(3), MM(3), NN(3), OO(3), PP(3), SS(3), TT(3), UU(3), VV(3), WW(3),
XX(3), YY(3), ZZ(3), BBB(3), CCC(3), DDD(3), EEE(3).

[25]    *See* PX 214 (McKenney Decl.) Atts. I(14), J(13), L(14-15), M(14), N(13-14),
P(13), U(14), W13, 25(), X(12), BB(12-13), CC(11), DD(13-14), EE(13-14), II(12), JJ(13),
KK(13), LL(12), OO(13), TT(12-13), UU(13), VV(12), WW(13), XX(12), YY(12-13), ZZ(10),
EEE(13-14).

parties ultimately become "assignees" of the mortgages.[26]  These attendant fees and other costs are often nearly as large as the amount of the arrearages on the first mortgages.  Although the Truth In Lending Act disclosures provided to consumers show APRs of 18 - 28%, most of these loans actually have APRs, when properly computed, of more than 100%.[27]  In some cases, respondents have either bullied or tricked homeowners into also signing deeds in lieu of foreclosure, allowing the respondents to simply take possession of the homeowner's house in the event of default without providing the homeowners the protections built into the foreclosure process.[28]  Respondents hold these "deeds" in escrow, only registering them with the local recorders' offices months later.  In all, there is evidence showing more than three dozen loans throughout central Florida entered into by the respondents.

## III.    THE RESPONDENTS SHOULD BE FOUND IN CONTEMPT

By engaging in their supposed mortgage foreclosure rescue operations, there is no question that Porcelli and his cohorts have violated the Court's final orders in this case.  The case for contempt is straightforward.  Pursuant to their respective permanent injunctions, Porcelli, Harris and Tomasulo are enjoined from any involvement in the sale of any product or service related to credit.  In particular, Section II of the Porcelli/Harris Order enjoins the

---

[26]    *See* PX 214 (McKenney Decl.) Atts. J(16-19), L(20-23), M(20), O(27-30), P(21), R(23), U(19-22), V(22-25), W(28-31), X(20), Z(20), AA(17, 19), CC(19), DD(21-24), EE(22), FF(20-23), GG(17, 21), II(23-26), JJ(24-27), KK(20-23), LL(21), MM(20-23), NN(23-26), OO(20-23), SS(20-23), UU(20), WW(22-25), YY(19-20), BBB(18), DDD(21-24), EEE(22).

[27]    *See* PX 214 (McKenney Decl.) Atts. I(6), J(6), L(6), M(6), N(6), O(6), P(6), Q(6), R(6), U(6), V(6), W(6, 18), X(6), Y(4), Z(6), AA(6), BB(6), CC(6), DD(6), EE(6), FF(6), GG(6), II(6), JJ(6), KK(6), LL(6), MM(6), NN(6), OO(6), PP(6), SS(6), TT(5), UU(6), VV(6), WW(6), XX(6), YY(6), ZZ(4), AAA(6), BBB(6), CCC(21), DDD(6), EEE(6) (TILA stmts).

[28]    *See* PX 214 (McKenney Decl.) Att. GG(19), FFF(7), HHH(2), III(2), JJJ(8), KKK(7).

-8-

defendants "from promoting, offering for sale, or selling, directly or indirectly, Credit-Related

Products to any consumer." Section I of the Tomasulo Order enjoins him from "engaging in,

participating in, or assisting in the Telemarketing, advertising, promotion, offering for sale, or

sale of Credit-Related Products to any consumer." Both orders define "Credit-Related Product"

as:

> any product, program, or service which is advertised, offered for sale, or sold as a
> method by which persons may establish or obtain any extension of credit or credit
> device, including, but not limited to credit cards, loans, or financing, or as a
> method to consolidate or liquidate debts.

A.    **Standard for Contempt.**

To prove contempt, the FTC must show by clear and convincing evidence that: (1) valid

court orders existed; (2) the defendants had knowledge of the orders; and (3) the defendants

failed to comply with the orders. *See FTC v. Trudeau*, No. 03-C-3904, 2007 U.S. Dist. LEXIS

85214, at *11 (N.D. Ill. November 16, 2007) (J. Gettleman) (citing *Stotler & Co. v. Able*, 870

F.2d 1158, 1163 (7th Cir. 1989)). If a violation is shown, the defendant's intent is irrelevant. *See*

*SEC v. McNamee*, 481 F.3d 451, 455-56 (7th Cir. 2007) ("*scienter* is not required for civil-

contempt") (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)); *American*

*Family Mutual Ins. Co. v. Roth*, No. 05-C-3839, 2008 U.S. Dist. LEXIS 3557, at *7-8 (N.D. Ill.

Jan. 15, 2008) (J. Guzman) ("an inadvertent violation does not preclude a contempt citation")

(citing *CFTC v. Premex, Inc.*, 655 F.2d 779, 785 n.11 (11th Cir. 1981)); *SEC v. Showalter*, 227 F.

Supp. 2d 110, 120 (D.D.C. 2002) ("[t]he defendant's intent regarding compliance with the order

is irrelevant"); *SEC v. Yun*, 208 F. Supp. 2d 1279, 1285 (M.D. Fla. 2002) (intent in failing to

comply is irrelevant); *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000) ("Bilzerian's

intent is irrelevant; the Court need not find that his failure to comply with the orders was willful

or intentional."). Moreover, unfamiliarity with the particulars of an order is not a defense to a charge of contempt. *Perfect Fit, Inc. v. Acme Quilting Co.*, 646 F.2d 800, 808 (2d Cir. 1981). A party may be held in civil contempt unless the defendant establishes that he or she has been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. School District of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995); *American Family*, 2008 U.S. Dist. LEXIS 3557, at *8; *FTC v. Trudeau*, 2007 U.S. Dist. LEXIS 85214, at *11.

**B.    Porcelli, Harris, and Tomasulo Should Be Found in Contempt.**

The FTC clearly has satisfied its initial burden here. Porcelli, Harris and Tomasulo are all subject to valid court orders.[29] Similarly, all three have shown they know of their respective orders.[30] Finally, they all have violated the orders: the orders unambiguously enjoin the defendants from virtually any involvement in any enterprise which charges consumers money in connection with the consumers obtaining loans.

In dozens of instances, Porcelli, Harris and Tomasulo did exactly what was forbidden by the Court's orders – they engaged in, participated in, or assisted in, the advertising, promotion, offer for sale, or sale of a product or service by which persons could obtain a loan. All of Safe Harbour's income apparently came from charging substantial fees to homeowners for "assisting" in obtaining loans, which Safe Harbour "advertised" and "promoted," from Safe Harbour's lending counterparts, Silverstone Lending and Silverstone Financial. Similarly, Silverstone Lending and Silverstone Financial apparently earned their income from substantial fees and payments from loans they "sold" to homeowners. The attached documentary evidence clearly

---

[29]    *See* PX 209 (Porcelli/Harris Order), PX 210 (Tomasulo Order).

[30]    *See* PX 214 (McKenney Decl.) Atts. A, B, C.

establishes extensive participation by each defendant. Porcelli was an owner, officer, or

manager of each corporation.[31] He signed loan documents on behalf of the corporations,

corresponded and communicated with homeowners and third parties with respect to the loans,

and managed their day-to-day operations.[32] Harris also corresponded and communicated with

homeowners, ordered appraisals on behalf of the corporations, and arranged for the loan

closings.[33] Tomasulo communicated with consumers and third parties, and signed loan

documents on behalf of the companies.[34]

In short, each of the defendants engaged in a variety of tasks for an enterprise whose

primary purpose was to violate this Court's orders.

### C.    Safe Harbour, Silverstone Lending, Silverstone Financial, and Thomas C. Little Should Be Held in Contempt.

Under Fed. R. Civ. P. 65, injunctions apply not only to the defendants, but also to those

---

[31]    *See* PX 214 (McKenney Decl.) Att. D.

[32]    *See* PX 214 (McKenney Decl.) Atts. I(5), J(5, 17, 19), L(5, 18, 20), M(5, 21), N(5, 19, 22, 23), O(5, 18, 20, 28), P(5, 17, 21), R(5, 23), U(5, 17, 19), V(5, 16, 23, 25, 26), W(5, 29, 31), X(5, 20), Y(11, 16, 20), Z(5, 21), AA(5, 17, 21), BB(5), CC(5, 20), DD(5, 19), EE(5, 23), FF(5, 18, 20), GG(5, 17, 22), II(5, 24, 27), JJ(5, 22, 24), KK(5, 20, 24), LL(5, 21), MM(5, 20, 24), NN(5, 16, 17, 23, 27), OO(5, 17, 20), PP(5, 20, 24), SS(5, 20), TT(4, 17), UU(5, 19-20), VV(5, 8), WW(5, 22, 26), XX(5), YY(5, 19), AAA(3), BBB(5, 18), CCC(5, 15, 17, 22, 25), DDD(5, 21), EEE(5, 23), GGG(2), III(2), JJJ(4,10).

[33]    *See* PX 214 (McKenney Decl.) Atts. G(3-4), H(5), I(18-21), J(22-25), K(7-10, 12), L(25-26), M(18-19), O(18, 23-26), P(19-20), Q(14-16), R(15, 17-22), S(3-6), T(3-6), U(24-30), V(18-21), X(18-19), Y(18-19), Z(16-20), AA(16, 23-26), BB(18-21), CC(17-18), DD(16-19), EE(18-21), FF(17), GG(15-16), HH(9-10), II(15, 18-22), JJ(17-21), KK(17-19), LL(16-19), MM(16-19), NN(18-22), OO(16, 19-22), PP(16-19), QQ(4-5), RR(2-7), SS(16-19), TT(15-18), UU(17-18), VV(16-17), WW(18-21), XX(22-23), YY(18-19), ZZ(13), AAA(4-8), BBB(8, 14, 17), CCC(16-20), DDD(16-19), EEE(18-21).

[34]    *See* PX 214 (McKenney Decl.) Atts. H(3-4), N(18), V(15-16, 26), X(16-17), BB(17), CC(16), DD(20), GG(22), HH(3-8), II(17), LL(20), QQ(3,6), TT(17), UU(19), WW(17), XX(16-21), DDD(20).

who have notice of the Order and are in "active concert or participation" with them. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945); *SEC v. Homa*, Nos. 06-3320 & 07-1590, 2008 U.S. App. LEXIS 1337, at *35-37 (7th Cir. Jan. 24, 2008); *Stotler v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989); *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1104 (C.D. Cal. 2001). Moreover, notice to a non-party does not require that the non-party be formally served with the injunction. "All that is required is that the aider and abettor be given 'fair notice that acting in concert with the named defendants would subject them to contempt proceedings.'" *Select Creations, Inc. v. Paliafito America, Inc.*, 852 F. Supp. 740, 779 (E.D. Wis. 1994) (quoting *New York State National Org. for Women v. Terry*, 961 F.2d 390, 398 (2d Cir. 1992), vacated on other grounds, 113 S. Ct. 1233 (1993)). "Indeed, if courts did not have the power to punish those who cooperate with those named in an injunction, the named parties could easily thwart the injunction by operating through others." *SEC v. Homa*, 2008 U.S. App. LEXIS 1337, at *35 (7th Cir. Jan. 24, 2008).

Based on this standard, Safe Harbour, Silverstone Lending, and Silverstone Financial should also be found in contempt. As detailed above, the three individual defendants control virtually every phase of the corporations' business affairs – the corporations exist merely as a mechanism for violating this Court's orders. *See Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Brotherhood Labor Leasing*, 207 F.3d 500, 507 (8th Cir. 2000) (holding non-parties in contempt where they are "legally identified" with defendant contemnors); *Select Creations*, 852 F. Supp. at 779 (same) (citing *Illinois Dept. of Public Aid v. U.S. Dept. of Health & Human Services*, 772 F.2d 329, 332 (7th Cir. 1985)).

Similarly, Thomas Little should be held in contempt, for acting in active concert or participation with the named defendants. Little's status as a lawyer is no impediment to his

-12-

being named a contemnor.[35] *See, e.g., Cottman Transmission Systems, Inc. v. Metro Distributing, Inc.*, Nos. 92-2131 & 2253, 1996 U.S. Dist. LEXIS 1052, at *13-15 (E.D. Pa. Feb. 2, 1996); *Georgine v. Amchem Products, Inc.*, No. 93-0215, 1995 U.S. Dist. LEXIS 9744, at *28 (E.D. Pa. July 13, 1995). As the lawyer for Porcelli and Harris in *Bay Area Business Council*, Thomas Little was fully informed about the terms of the order and attendant ban. In fact, Little filed and argued the appeal to the Seventh Circuit, which affirmed this Court in all respects. Despite this, Little not only organized the central corporate entities, has been involved in the foreclosure scam, and has acted as their registered agent, he also has prepared the legal documents and personally collected a fee in nearly every transaction.[36] Thus, Little's participation has been essential to the operation and he should be found in contempt.[37]

### Proposed Order

To prevent further consumer injury and asset dissipation, we therefore request that this Court take all necessary action to coerce the defendants' and respondents' compliance with the Court's Permanent Injunctions, including the following.

First, Porcelli, Harris, Tomasulo, Little, Safe Harbour, Silverstone Lending, and Silverstone Financial should be required to provide an accounting and deposit into an escrow

---

[35]    Although this motion focuses on Little's conduct as part of the contemptuous operations, attorneys have been held in contempt even for incorrectly advising clients that certain conduct would not violate court orders. *See Chicago Truck Drivers*, 207 F.3d at 507 n. 7; *Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Brotherhood Labor Leasing*, 230 F. Supp. 2d 963, 970-71 (E.D. Mo. 2002).

[36]    *Supra* note 20.

[37]    Little's participation, however, could not provide Porcelli or his cohorts with a defense to this motion: reliance on advice of counsel is not a defense to a charge of civil contempt. *See SEC v. McNamee*, 481 F.3d at 455-56 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *In re Walters*, 868 F.2d 665, 668-69 (4th Cir. 1989)).

account with the Court all monies they received in connection with their mortgage operations.

Second, the Court should impose a daily fine on Porcelli, Harris, Tomasulo, Little, Safe Harbour, Silverstone Lending, and Silverstone Financial until the escrow is established. The daily fine should only cease to accrue once Porcelli, Harris, Tomasulo, Little, Safe Harbour, Silverstone Lending, and Silverstone Financial have established the escrow.

Third, the Court should amend the Order for Permanent Injunction to explicitly cover Porcelli's new companies, Safe Harbour Foundation of Florida, Silverstone Lending, and Silverstone Financial, as well as any other successor entities or DBAs created by or affiliated with Porcelli.

Fourth, the Court should enjoin Porcelli, Harris, Tomasulo, Little, Safe Harbour, Silverstone Lending, and Silverstone Financial, from taking any further actions with respect to the loans to homeowners for which they are responsible, including, but not limited to, foreclosing on mortgages, continuing further collection efforts, and recording, transferring, or taking any action with respect to any unregistered deeds in their possession.

Fifth, in the event that Porcelli, Harris, Tomasulo, or Little continue to disregard the Court's orders, the Court should order them to appear personally to show cause why they should not be incarcerated until such time as they comply with the Court's orders. *See, e.g., United States v. Lippett*, 180 F.3d 873, 877 (7th Cir. 1999) (characterizing confinement order to coerce compliance with a court order the "paradigmatic" civil contempt sanction).

WHEREFORE, plaintiff Federal Trade Commission respectfully requests that the Court enter an order to show cause why defendants Peter J. Porcelli, II, and Bonnie Harris, and respondents Thomas C. Little, Safe Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial, LLC, should not be held in civil contempt for violating the

-14-

Court's Order for Permanent Injunction with Monetary Judgment and Other Relief Against Bay

Area Business Council, Inc., Bay Area Business Council Customer Service Corp., American

Leisure Card Corp., Bay Memberships, Inc., Sr. Marketing Consultants, Inc., Special

Technologies, Inc., Peter J. Porcelli, II, and Bonnie Harris, of April 14, 2004; and enter an order

to show cause why defendant Christopher Tomasulo and respondents Thomas C. Little, Safe

Harbour Foundation of Florida, Inc., Silverstone Lending, LLC, and Silverstone Financial, LLC,

should not be held in civil contempt for violating the Court's Stipulated Final Judgment and

Order for Permanent Injunction and Other Equitable Relief Against Defendant Christopher

Tomasulo, of February 2, 2005.

Respectfully Submitted,

WILLIAM BLUMENTHAL
General Counsel

DATED: February 27, 2008

/s/ David A. O'Toole
DAVID A. O'TOOLE
GUY G. WARD
Federal Trade Commission
55 West Monroe Street, Ste. 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
dotoole@ftc.gov
gward@ftc.gov

## CERTIFICATE OF SERVICE

I, David A. O'Toole, hereby certify that on February 27, 2008, I electronically filed the foregoing **Notice of Motion, Motion For Order To Show Cause Why Defendants And Respondents Should Not Be Held In Contempt**, and **Declarations and Exhibits in Support of FTC's Motion for Order to Show Cause Why Defendants and Respondents Should Not Be Held in Contempt**, with the Court using the CM/ECF system. I hereby certify that, on the same day, I sent copies of these filings by Federal Express delivery to the following:

(for himself and respondents Silverstone Lending LLC, Silverstone Financial LLC, and Southeast Advertising, Inc.)
Thomas C. Little
2123 NE Coachman Rd., Ste. A
Clearwater, FL 33765
(727) 443-5773

(for himself and Safe Harbour Foundation of Florida, Inc.)
Peter J. Porcelli
Fort Dix Federal Correction Institute
5756 Hartford & Pointville Road
Fort Dix, NJ 08640

Bonnie Harris
(at her home address)

Christopher Tomasulo
(at his home address)

Keystone Financial, LLC, now known as Vertek Group LLC
c/o Rachael Cook
8960 W. Tropicana Ave., Suite 500
Las Vegas, NV 89147

MT 25 LLC
c/o Ival Sub Consulting
514 Annet St.
Henderson, NV 89052

/s/ David A. O'Toole
David A. O'Toole
Attorney for Plaintiff
Federal Trade Commission